# EXHIBIT B



# UNCLASSIFIED

# UNITED STATES AFRICA COMMAND INSTRUCTION

J3                                                                                    ACI 3200.03A
                                                                                      24 June 2020

Reporting and Responding to Civilian Casualty Allegations and Incidents

References:

a.   Department of Defense Directive (DoDD) 2311.01E

b.   Chairman of the Joint Chiefs of Staff Instruction (CJCSI) 5810.01D

c.   Implementation of the DoD Law of War Program (30 April 2010)

d.   DoD Law of War Manual (12 June 2015)

e.   E.O. 13732, United States Policy on Pre- and Post-Strike Measures to Address Civilian Casualties in U.S. Operations Involving the Use of Force (1 July 2016)

f.   Interim Regulations for Condolence or Sympathy Payments to Friendly Civilians for Injury or Loss That is Incident to Military Operations (22 June 2020)

Expires:  24 June 2025

1. <u>Purpose</u>.  This instruction establishes a process and outlines procedures for the reporting, assessing, tracking, investigating, and public release of information regarding civilian casualty (CIVCAS) allegations associated with military operations in United States Africa Command's (USAFRICOM) area of responsibility (AOR).

2. <u>Applicability</u>.  This policy applies to all U.S. military units operating in the USAFRICOM AOR. Joint Task Force (JTF) Commanders, Component Commanders, and all subordinate units are responsible for implementing this policy within their commands.

3. <u>Policy</u>.  In accordance with references (a) through (e) USAFRICOM, Component Commanders, and subordinate units will ensure all CIVCAS allegations, regardless of source, are treated as serious claims and are reported and assessed in accordance with this instruction and in compliance with

# UNCLASSIFIED

# UNCLASSIFIED

ACI 3200.03A
24 June 2020

national and international obligations. Every unit operating in USAFRICOM will report all actual or alleged CIVCAS to the USAFRICOM Director of Operations, Office of Primary Responsibility (OPR), through their chain of command via the USAFRICOM Joint Operations Center (JOC).

a.  The CIVCAS review process outlined in paragraph 4 will be followed in every case when the subject of the allegation is U.S. Military forces under the authority of USAFRICOM.

b.  In the case of allegations against partner forces, notice to USAFRICOM is required. The OPR will determine whether to activate the CIVCAS assessment process in consultation with the relevant Commander, country team, and Chief of Mission.  Considerations weighing in favor to utilizing the CIVCAS assessment process include, but are not limited to: the scope of U.S. Military force involvement in the partner force mission that resulted in an allegation of CIVCAS, the strategic partnership with the partner force against whom allegations are made, the relative capacity of the partner force to conduct an independent assessment, and the overall severity of the allegation itself.

4.  Process and Procedures.

a.  Notification Report. The purpose of the notification report is to provide awareness of basic information about a potential CIVCAS incident to the OPR and all members of the CIVCAS Cell. It will include: who, what, when, and where, along with any other immediately available information. The notification report will also include requests for information to the CIVCAS Cell members in order to begin the assessment of the allegation, and inform the follow-on First Impression Report (FIR). The notification report is sent by the J334, normally within 24 hours of awareness of the potential CIVCAS incident. Following notification to the OPR and CIVCAS Cell, the J334 will also provide the information to the JOC. The JOC will release a notification to the Combatant Commander.

b.  First Impression Report (FIR). A FIR shall be used as the CIVCAS Cell's initial assessment of a CIVCAS allegation. The FIR will contain a narrative description of the incident (who, what, when, where, and any other immediately available information), information on correlated USAFRICOM strikes or operations (details on the military operation, combat assessment, surveillance imagery, any known details regarding medical treatment, details regarding media engagement, or other collateral concerns), and relevant information from the CIVCAS Cell supporting its recommended disposition to the OPR.

(1) With the Notification Report, the FIR may recommend a finding of **unsubstantiated** without further inquiry if:

2

# UNCLASSIFIED

# UNCLASSIFIED

ACI 3200.03A
24 June 2020

(a) The allegation does not reasonably correlate to a USAFRICOM strike or operation; or

(b) The allegation provides insufficient information to identify a location or date of allegation.

<u>1</u>  If allegation does not reasonably correlate to a USAFRICOM strike or operation or the allegation provides insufficient information to identify a location or date of allegation, the OPR may make the determination that the allegation of CIVCAS is unsubstantiated on its face and the incident be logged and recorded in a Memorandum for Record (MFR) (Encl E), with no further assessment directed. The Combatant Commander or their designee may close the MFR in the two above situations. If relevant information becomes available at a later date, the incident will be re-assessed.

(2) The FIR may recommend a finding of **unsubstantiated** without further inquiry if:

(a) Review of information such as operational data, video surveillance from Intelligence, Surveillance, and Reconnaissance (ISR) assets, and other forms of intelligence, confirms that the individual(s), facilit[y/ies], or equipment targeted were legitimate military targets at the time of the strike as determined by the Target Engagement Authority (TEA).

(b) The allegation is materially flawed, in ways not already addressed in 4.b.1. or 4.b.2.a., and can be refuted through review of operational data, video surveillance from Intelligence, Surveillance, and Reconnaissance (ISR) assets, other forms of intelligence, and operational reporting.

<u>1</u>  If either situation above exists, the OPR may make the determination that the allegation of CIVCAS is unsubstantiated and the incident will be logged and recorded in an MFR, with no further assessment directed. The Combatant Commander or their designee will close the MFR. If relevant information becomes available at a later date, the incident will be re-assessed. The Combatant Commander or their designee may order a CCAR for any allegation, even if it meets the criteria in 4.b.1. or 4.b.2.

c.  Civilian Casualty Assessment Report (CCAR). A CCAR is required to determine if civilians were more likely than not injured or killed as a result of USAFRICOM actions, or if more information is needed to make a determination. If the FIR is unable to determine that the allegation is unsubstantiated, the OPR will appoint an Assessment Officer (AO) to gather the additional information required to make a recommendation as to the determination of the CIVCAS allegation or to establish the facts of an actual CIVCAS. AOs are expected to submit CCARs to the OPR within 30 days from

3

# UNCLASSIFIED

# UNCLASSIFIED

ACI 3200.03A
24 June 2020

initial tasking. Normally, the AO will be selected from the command that served as the TEA for the operation or kinetic action in question. If the allegation involves partner forces, the OPR will consult with the country team to determine host nation equities and perspectives.

(1) The CCAR must contain a narrative description of the incident, enclosures supporting its conclusions, and a recommendation to the OPR regarding the determination of the allegation.

(a) Based on all reasonably available information, should the assessment support a finding that USAFRICOM actions or operations more likely than not resulted in the death or injury of civilians, the AO should make a recommended finding of **substantiated CIVCAS**.

<u>1</u> For a recommended finding of substantiated CIVCAS, the CCAR must include a determination of whether the prospective recipient of an ex gratia payment is friendly to the United States per Reference F.

(b) Based on all reasonably available information, should the assessment support a finding that USAFRICOM actions or operations resulted in the death or injury of a legitimate military target, civilian deaths or injuries could not have resulted from a USAFRICOM action or operation, or there is insufficient evidence to corroborate the allegation the AO should make a recommended finding of **unsubstantiated CIVCAS**.

(c) Prior to submission of the CCAR to the OPR, a Judge Advocate will conduct a legal review ensuring a sufficient review was conducted, sufficient evidence was presented in the CCAR to support the findings, and to assess whether the strike or operation complied with the current Rules of Engagement and the Law of Armed Conflict. The Judge Advocate will document their assessment in a memo appended to the CCAR (Encl C).

(d) Investigation. Normally, the OPR will direct an investigation if further information is required to document the underlying facts, or to answer questions not fully addressed by the CCAR, in the event of substantiated CIVCAS. Investigations will be conducted in accordance with Army Regulation 15-6 or U.S. Service equivalent. The OPR is responsible for ensuring the investigation officer is properly appointed, empowered and supported to conduct a thorough and timely investigation. If the OPR determines that an investigation is unlikely to result in any additional relevant evidence to make a determination of the CIVCAS allegation, the OPR may close the investigation until such time that additional relevant information is made available. If the incident involves a partner force, the OPR will consult with the applicable country team to determine host nation equities and perspectives in making this determination.

4

# UNCLASSIFIED

# UNCLASSIFIED

ACI 3200.03A
24 June 2020

5. <u>Responsibilities.</u>

a. Operations Directorate (J3).  As the OPR for all CIVCAS assessments in the AOR:

(1) Coordinate the processes and standards for accurately recording kinetic strikes by USAFRICOM forces.

(2) Coordinate the processes and standards for reviewing and assessing allegations of civilian casualties resulting from USAFRICOM military operations, including the consideration of relevant information from all available sources.

(3) Coordinate on all public affairs guidance with respect to matters relating to civilian casualties alleged, or confirmed to have resulted from, USAFRICOM operations.

(4) Maintain tracker and record of all CIVCAS assessments.

b. Intelligence Directorate (J2)

(1) Upon official notification of CIVCAS, provide all-source intelligence in the form of a J2-signed MFR to inform FIRs.

(2) Provide recommendations in the conduct of reviewing and investigating allegations of civilian casualties resulting from USAFRICOM military operations.

(3) Provide input to draft FIRs and CCARs.

(a) Establish J2 procedures to ensure all CIVCAS assessments are assessed appropriately and in accordance with this instruction.

c. USAFRICOM Office of Legal Counsel (OLC)

(1) Provide legal review and recommendations for FIRs, MFRs, CCARs, public affairs products, and any other CIVCAS related materials resulting from USAFRICOM military operations.

(2) Advise on the issuance of ex gratia payments.

d. USAFRICOM Chief of Staff. Approval and oversight of all publically released CIVCAS information.

e. USAFRICOM Public Affairs and Communications Synchronization Division.

# UNCLASSIFIED

# UNCLASSIFIED

ACI 3200.03A
24 June 2020

(1) Address international and national media concerns through press conferences, social media dialogue, and hosting in-depth interviews with journalists.

(2) Lead for preparing public affairs guidance and any news release that pertains to CIVCAS allegations resulting from USAFRICOM military operations. Compile, maintain, and release the quarterly USAFRICOM Civilian Casualty Status Report.

(3) Maintain ability for the public to provide information related to CIVCAS on USAFRICOM website. Monitor inputs and report any received allegations of CIVCAS to the CIVCAS Cell.

f.  Joint Task Force Commanders and Component Commanders. Establish reporting procedures to ensure all CIVCAS (whether alleged or confirmed) are recorded and assessed appropriately and in accordance with this instruction.

6. Releasability. Unclassified Unlimited. This instruction is approved for public release; distribution is unlimited.  Users may obtain copies on the USAFRICOM network portal.  USAFRICOM activities only through controlled access via the USAFRICOM network portal.

7. Effective Date. This instruction is effective upon signature.

WILLIAM K. GAYLER
Major General, U.S. Army
Chief of Staff, U.S. Africa Command

Enclosures:
A. Acronyms, Abbreviations, and Terms
B. USAFRICOM CIVCAS Process Flowchart
C. Sample CCAR
D. Sample SJA Legal Review
E. Sample MFR

6

# UNCLASSIFIED

# UNCLASSIFIED

ACI 3200.03A
24 June 2020

Enclosure A

Acronyms, Abbreviations, and Terms

**Acronyms/Abbreviations**

**AO** – Assessment Officer
**AOR** – Area of Responsibility
**CCAR** - Civilian Casualty Assessment Report
**CIVCAS** - Civilian Casualty
**FIR** – First Impression Report
**JOC** – Joint Operations Center
**JTF** - Joint Task Force
**MFR** – Memorandum for Record
**OLC** – Office of Legal Counsel
**OPR** - Office of Primary Responsibility
**USAFRICOM** - U.S. Africa Command

**Terms**

**Allegation**.  Any public allegation, observation, or report of a CIVCAS, regardless of origin. An allegation may arise from any source including, but not limited to, a unit's self-report, a non-governmental organization, media, or public social media.

**Civilian**. Persons who are not combatants (members of military/security forces or members of either a declared hostile force or an organized armed group of a party to an armed conflict). Civilians may lose their protection against attacks if demonstrating hostile intent, engaging in a hostile act, or for such time as they take direct part in hostilities; but they retain or regain such protection when they cease said conduct, or if they become hors de combat (i.e., wounded, sick, detained, or surrendering), and thereby are unable to continue said conduct. All personnel in the USAFRICOM area of responsibility are protected civilians, unless they are positively identified (PID) as legitimate military targets.

**CIVCAS (Civilian Casualty)**. The death or injury of a civilian, who had not lost protected status at the time of the death or injury, resulting from the kinetic actions of U.S. forces. This may include Close Air Support, Close Combat Aviation, Direct Fire, Indirect Fire, and other actions directly linked to security operations.

**Substantiated CIVCAS**.  A CIVCAS allegation is substantiated if a CCAR or investigation determines it is more likely than not that a civilian was killed or

A-1

# UNCLASSIFIED

# UNCLASSIFIED

ACI 3200.03A
24 June 2020

injured as a result of USAFRICOM action, based on all reasonably available information. The totality of the circumstances must be considered, including the reliability of the source (*e.g.* the past reliability of the source, how the source obtained the information), whether there is contradictory or corroborating information, or other information relevant under the circumstances.

**Unsubstantiated CIVCAS**. A CIVCAS allegation is unsubstantiated:

a. If a FIR determines that (a) the allegation does not reasonably correlate to a USAFRICOM strike or operation, or (b) the allegation provides insufficient information to identify a location or date of allegation; or

b. If a FIR or CCAR determines, based on all reasonably available information, that the target of a USAFRICOM action or operation was a legitimate military target; or

c. If a FIR or CCAR determines, based on all reasonably available information, that it is more likely than not that CIVCAS did not occur as a result of USAFRICOM action.

d. If a CCAR determines, based on all reasonably available information, that there is insufficient evidence to corroborate the allegation.

**First Impression Report**. The CIVCAS Cell's initial assessment of a CIVCAS allegation. The FIR will contain a narrative description of the incident (who, what, when, where, and any other immediately available information), information on correlated USAFRICOM strikes or operations (details on the military operation, combat assessment, surveillance imagery, any known details regarding medical treatment, details regarding media engagement, or other collateral concerns), and relevant information from the CIVCAS Cell supporting its recommended determination to the OPR.

**Office of Primary Responsibility (OPR).**  The OPR is responsible for the collection and maintenance of CIVCAS information, appropriate assessment of CIVCAS allegations, and dissemination of any CIVCAS reports.  Additionally, the OPR will provide oversight of lessons learned from CIVCAS incidents, and ensure that those lessons learned are used to improve current practices and to deliver key messages to the command and components.

# UNCLASSIFIED

# UNCLASSIFIED

ACI 3200.03A
24 June 2020

Enclosure B

## AFRICOM CIVCAS Process Flowchart



B-1

# UNCLASSIFIED

# UNCLASSIFIED

ACI 3200.03A
24 June 2020

Enclosure C

WHEN COMPLETED THIS DOCUMENT BECOMES
SECRET

**SAMPLE CCAR**

**SUBJECT**: Civilian Casualty Assessment Report (CCAR) for Allegation
[Allegation Number], [Location], [DD Month YYYY]

**Reference**:
a. Reporting and Responding to Civilian Casualty Allegations and Incidents
b. [List any additional references relevant to CCAR]

1. (S//REL [Foreign Mark]) **BLUF**: I recommend you find that that the
allegation of civilian casualt[y/ies] on [date] in [location] is [SUBSTANTIATED/
UNSUBSTANTIATED]. This assessment is based upon a thorough review of all
reasonably available information, including information provided by [source(s)].

2. (U) **CIVCAS Allegation**:

    a. (U) **Source**: [Allegation Source]
    b. (U) **Time and Location**: [Date and Time from FIR], [Location from FIR]
    c. (U) **Allegation**: [Allegation from FIR] [Copy and paste allegation as it was
written. If it is a self-report, update classification as required. Use quotation
marks to indicate original material.]
    d. (U) **Discussion**: [*Summary of allegation for ease of understanding.*]

3. (S//REL [Foreign Mark]) **Summary of USAFRICOM Strike Activity**:
[*Include, if able, the date, number of strikes, number of engagements in each
strike, vicinity to allegation location, ISR that was on station, and who conducted
strike analysis. Pay attention to what information you put into this paragraph
and what the classification and foreign disclosure marking is. Try to include:
Who, What, When, and Where*] (Encl #)

4. (S//REL [Foreign Mark]): **Strike [strike #] Overview**:
[*Include information on reasonably corroborating strikes.*]

5. (S//REL [Foreign Mark]) **Review of Supporting Intelligence**:
[Target Name] (BE: [BE Number]) was a [Physical Description] located at
[MGRS]. [Nominator] assessed the target facility as [Functional
Characterization]. This assessment was made with [Confidence Call] confidence
and supported by [Number of HUMINT, SIGINT] reports as recent as [Most
Recent Report Date] and [FMV Duration] of prestrike aerial reconnaissance Full

C-1

# UNCLASSIFIED

# UNCLASSIFIED

ACI 3200.03A
24 June 2020

Motion Video (FMV) as recent as [Most Recent Observation Date]. On [DD MMM YY] FMV produced a high slant of [#]/[#] /[#]. The facility formerly functioned as a [Former Function]. The facility was assessed to have been under the use and control of [enemy group] since at least [DD MMM YY] and was assessed to be [Single/Dual] use (Encl #). [*This paragraph is a basic example: depending on the nature of the supporting intelligence you may want to include more or different information. The goal is that someone reading the CCAR will not need to refer to the target pack or supporting material for understanding.*]

6. (S//REL [Foreign Mark]) **Battle Damage Assessment:**
The BDA call for this strike was [BDA Call]. On [DD MMM YYYY], imagery was taken of the target facility. The imagery shows [what does the BDAG show?]. (Encl #) [*This can come from multiple locations (MIRC Log, Strike Report, etc.), be detailed, use what makes sense and elaborate (i.e. Was the building severely damaged but still standing or completely destroyed? Did any rounds miss the target or dud?). Remember to use terms such as "there appears" when something is not blatantly obvious, for example: a collapsed building is obviously collapsed, but damage to a nearby structure is not visible, but not dis-proven, therefore, the nearby structure appears to be undamaged.*]

7. (S//REL [Foreign Mark]) **Review of Chat Logs** (*as available*)**:**

*8.* (S//REL [Foreign Mark]) **Review of Full Motion Video (FMV)/Weapon Sight Video (WSV):** FMV and WSV [was/was not] available for this strike (Encl#). [*Indicate what footage was available and who provided it, or any lack of footage and why (provide email as enclosure if video is unavailable). Discuss what is seen in the FWV/WSV of the strike in question and compare it to the Chat Logs for additional information. DO NOT make definitive statements unless they are backed by a certified analyst, instead use wording such as: "it appears … ," "it looks as though … " WSV is video produced by the targeting system onboard strike aircraft. FMV is ISR video provided by reconnaissance aircraft (some have limited strike capabilities)*]

9. (S//REL [Foreign Mark]) **Strike CIVCAS Assessment:** Based on a thorough assessment of all reasonably available evidence, it is more likely than not that pick one: [Number] X Civilians were [KIA/WIA] (as required) OR no CIVCAS occurred as a result of this strike. [*If a tree falls in the woods and nobody is around … does it still make a sound? If you reasonably believe that casualties may have occurred, count them. You must provide a number and choose between KIA and WIA if CIVCAS is more likely than not to have occurred.*]

C-2

# UNCLASSIFIED

# UNCLASSIFIED

ACI 3200.03A
24 June 2020

10.  (S//REL [Foreign Mark]) **Additional Information:** [*This can include any additionally relevant information relied upon in making an assessment, possible reasons to task a 15-6, or anything else the AO considers pertinent to the CCAR.*]

11.  (S//REL [Foreign Mark]) **Allegation Determination Recommendation**: Based on a thorough assessment of all reasonably available evidence, I recommend you determine that this CIVCAS allegation is [SUBSTANTIATED/ UNSUBSTANTIATED]. [*For findings of SUBSTANTIATED, add:* That is, it is more likely than not that [Number] X Civilians were [KIA/WIA] as a result of this strike. I recommend/do not recommend an investigation be initiated to determine the chain of events that led to the CIVCAS and to obtain lessons learned to reduce the likelihood of future civilian harm.] [*For findings of UNSUBSTANTIATED, explain that there was no corresponding USAFRICOM strike, that the target was a legitimate military target, or that there was inadequate evidence to support a finding of substantiated CIVCAS.*]

12.  (U) The point of contact for this memorandum is the undersigned at: [email].

NAME
RANK, SERVICE
AO

C-3

# UNCLASSIFIED

# UNCLASSIFIED

ACI 3200.03A
24 June 2020

Enclosure D

Sample SJA Legal Review

WHEN COMPLETED THIS DOCUMENT BECOMES
SECRET

**SAMPLE JUDGE ADVOCATE ENDORSEMENT**

SUBJECT: Legal Review of CIVCAS Credibility Assessment Report (CCAR) -
Allegation [Allegation number], [Location], [DD Month YYYY]

(S//REL) I have conducted a legal review of the information in this CCAR.
Based upon all reasonably available information at this time, I find that:

   a. (S//REL) Sufficient evidence supports the finding of this CCAR.

   b. (S//REL) The strike(s) were in compliance with the ROE and LOAC
principles.

   c. (U) I recommend that the [OPR] approve this CCAR as [SUBSTANTIATED/
UNSUBSTANTIATED] based on the information reviewed and analyzed by the
Action Officer. I [do/do not] not recommend the initiation of an investigation
[*justify recommendation*].

        NAME
        RANK, SERVICE
        Judge Advocate

# UNCLASSIFIED

# UNCLASSIFIED

ACI 3200.03A
24 June 2020

Enclosure E

<u>Sample Memorandum for Record</u>

<span style="color:brown">WHEN COMPLETED THIS DOCUMENT BECOMES
SECRET</span>

**SAMPLE MEMORANDUM FOR THE RECORD**

SUBJECT: (U) CIVILIAN CASUALTY ASSESSMENT (#xx-xxx) DETERMINATION

1.  (U) BLUF: The CIVCAS Assessment Cell assessed CIVCAS #xx-xxx as
[**SUBSTANTIATED/UNSUBSTANTIATED**].

2.  (U) [*Insert brief factual summary of CIVCAS allegation.*]

3.  (S//NF) [*Insert brief summary of correlated military action or note lack of
correlating military action.*]

4.  (S/NF) [*Insert justification for determination based on facts in FIR/CCAR.*]

5.  Based on my review of the information contained in this FIR/CCAR and the
supporting evidence, I conclude that

[*Insert appropriate statement for conclusion*:

the evidence supports a finding of SUBSTANTIATED. That is, it is more likely
than not that the CIVCAS incident occurred. I direct an [*investigation or other
after-action report*] be conducted by [next superior command].

or

the evidence supports a finding of SUBSTANTIATED. That is, it is more likely
than not that the CIVCAS incident occurred. However, at this time I
recommend no further investigation, as no additional information could
reasonably be discovered.

or

the evidence supports a finding of UNSUBSTANTIATED. I direct that no further
action be taken by this command until such time as additional evidence
becomes available to reassess the allegation.

E-1

# UNCLASSIFIED

# UNCLASSIFIED

ACI 3200.03A
24 June 2020

or

an [investigation or other after-action report] be conducted by [next superior command].]

[*Insert brief factual summary and justification for findings.*]


NAME
RANK, SERVICE
CCDR or designee


E-2

# UNCLASSIFIED